IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE GRAY, Individually and as Independent Administrator of the Estate of William Gray, Deceased, | ) ) ) ) | |
| Plaintiff | ) ) | No. 02 C 7209 |
| v. | ) ) | The Honorable William J. Hibbler |
| DEGUSSA CORPORATION, an Alabama Corporation, CREANOVA, INC., a Delaware Corporation, f/k/a HULS AMERICA, INC., a Delaware Corporation, and SIVENTO, INC., an Alabama Corporation. | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit, nearly having completed its fifth year in this Court, inches closer to resolution with both parties filing motions for summary judgment and motions to dismiss. The Plaintiff moves to dismiss the DeGussa Corporation's affirmative defenses and also for summary judgment on those defenses. Creanova and Sivento move for summary judgment on all of Gray's claims against them. DeGussa moves for summary judgment on Counts VII-IX of Gray's complaint and for partial summary judgment on the remainder of Gray's claims.

I. Creanova's and Sivento's Motion

Creanova and Sivento argue that the Court should grant them summary judgment because they merged into DeGussa Corporation in 2003 whereby DeGussa acquired all of their liabilities and they ceased to exist. Creanova and Sivento submit the affidavit of Dr. Anke Frankenberger, a vice

1

president in DeGussa Corporation's Legal & Insurances Services Division and the Secretary and Compliance Officer for DeGussa Corporation. (Def. Creanova & Sivento 56.1(a) St. (Def. C&S St.), Ex. E). Dr. Frankenberger avers that both Sivento and Creanova merged into DeGussa Corporation on January 1, 2003 (Def. C&S St., Ex. E ¶¶ 3-4).

Gray objects to the Defendants' use of Dr. Frankenberger's affidavit on two grounds. First, Gray argues that Dr. Frankenberger's affidavit is not competent to prove (or in this case disprove) the existence of a corporation, citing to *People v. Gordon*, 5 Ill. App. 2d 91, 95, 125 N.E.2d 73, 76 (1995). The question of what evidence is competent, however, is a procedural question, and as federal court sitting in diversity, the Court applies federal rules to procedural questions. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Federal Rule of Civil Procedure 56(e) allows a party to rely on affidavits for summary judgment purposes when the affiant is competent to testify to the matters stated in the affidavit and has personal knowledge of the facts set forth in the affidavit. Fed. Rule Civ. P. 56(e). Gray also argues that the Court should reject Dr. Frankenberger's affidavit because she offers a legal conclusion. But whether Creanova and Sivento merged with DeGussa is a question of fact, and not a legal conclusion (indeed, the Illinois case on which Gray relies states as much). Accordingly, the Court will consider Dr. Frankenberger's affidavit in resolving the summary judgment motion.

Gray also argues that DeGussa's answers to her Complaint suggest that Creanova and Sivento continue to exist, as noted by the Court in the order denying the prior motion to dismiss. Defendants, however, note, that DeGussa's answers, while perhaps inartfully crafted, were simply a recognition that diversity jurisdiction existed at the time the suit was filed in October 2002.

Gray hoists one final argument to stave off Creanova's and Sivento's motion. Gray points to the Court's earlier order denying the Defendants' motion to dismiss, based on largely the same grounds, in which the Court pointed out that Defendants had not demonstrated what happened to Creanova's and Sivento's liabilities. This go around, however, they have. Defendants direct the Court to the Alabama Business Corporation Statute[1], which states that when corporations merge, the "surviving corporation shall be responsible and liable for all the liabilities and obligations of each corporation party to the merger." Ala. Code § 10-2B-11.06(a); *see also Watts v. TI, Inc.*, 561 So. 2d 1057, 1059 (Ala. 1990).

Gray offers no evidence to dispute Dr. Frankenberger's affidavit. The Court therefore finds that it is undisputed that Creanova and Sivento merged with DeGussa in 2003. The Court further rules that as a result of the merger, Creanova and Sivento ceased to exist and under Alabama law DeGussa became liable for the debts and liabilities of Creanova and Sivento. Therefore, the Court GRANTS summary judgment in favor of Creanova and Sivento.

## II. DeGussa's Motion

DeGussa moves for summary judgment on Gray's willful and wanton conduct claims (Counts VII - IX). DeGussa also moves for partial summary judgment on Gray's remaining claims. DeGussa's argument takes issue with Gray's reliance on two allegedly similar cases: the *Cicalese* case and the *Clark* case. DeGussa argues that these two cases are not sufficiently similar to the facts of this case, and therefore, the Court should grant it summary judgment, to the extent that she relies upon them.

---

[1] Because DeGussa was incorporated in Alabaman, Alabama law governs the extent to which it takes the position of the disappearing corporations. *Krull v. Celotex Corp.*, 611 F. Supp. 146, 148 n.3 (N.D. Ill. 1985).

3

Evidence of other accidents in products liability cases is relevant to show, among other things, notice to the defendant of the danger provided the accidents occurred under substantially similar circumstances. *Weir v. Crown Equip. Co.*, 217 F.3d 435, 457 (7th Cir. 2000); *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1185 (7th Cir. 1992). The Seventh Circuit has observed, however, that when a plaintiff uses evidence of similar accidents to prove notice, the requirement of similarity is less strict. *Nachstein v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 n. 9 (7th Cir. 1988).

DeGussa argues that the facts from *Cicalese* are distinguishable from those in this case, primarily because the decedent in *Cicalese* was not cutting on a drum containing hazardous vapors that directly caused an explosion, but instead was cutting an otherwise harmless drum and sparks from that activity entered an open bunghole of a nearby drum causing the vapors inside to ignite. (*See* DeGussa Br. at 9). DeGussa's argument is predicated on its assertion that the decedent in this case was cutting on a drum and that activity directly caused an explosion. The only evidence DeGussa offers in its summary judgment materials to support this assertion is a citation to page five of Gray's Amended Complaint. DeGussa, however, conveniently misreads the Complaint, which states that decedent "apparently was operating a portable cut-off saw *in the vicinity* of an apparently empty 55-gallon drum of Chem-Trete BSM 20." (Amended Compl. at ¶ 20) (emphasis added).

DeGussa also argues that it added warnings to the warning labels it affixes to the drums since the accident in *Cicalese* (and prior to the accident in this case). As a result, DeGussa argues, Gray cannot demonstrate that it engaged in willful and wanton conduct because it did not ignore a dangerous condition — instead, it took steps to remedy that condition by revamping its warning labels. In support of its motion, DeGussa attaches only evidence that is not authenticated — and it fails even to direct the Court to deposition testimony or business records to support its assertions.

4

Not surprisingly, Gray protests the use of unauthenticated evidence. Though it appears from the Court's reading of the parallel state court proceedings that no real dispute over the authenticity of DeGussa's evidence exists, the Court nonetheless shall not entertain DeGussa's motion based on such evidence.

At this stage of the proceedings, the Court DENIES DeGussa's motion for summary judgment and partial summary judgment based on its argument that the *Cicalese* case is dissimilar to the facts of this case and based on its argument that it revamped the warning label after the accident in *Cicalese*. Should it later become apparent that counsel for Plaintiff denied DeGussa's factual assertions in violation of Rule 11, the Court will entertain a motion for sanctions, provided DeGussa follows the proper procedural requirements set forth in the rule.

DeGussa's argument that the facts of *Clark* are not sufficiently similar to those of this case is more compelling. In *Clark*, a different chemical entirely was at issue — one which did not contain ethanol or methanol — and the accident was not caused by any sawing activity, but by cleaning mixing paddles. *See Gray v. Nat'l Restoration Sys., Inc.*, 820 N.E.2d 943, 961 (Ill. App. Ct. 2004). To the extent that Gray's claims in Counts I-IX are based upon reliance that DeGussa had notice of a dangerous condition as evidenced by the facts in *Clark*, the Court GRANTS DeGussa's motion for partial summary judgment.

### III. Gray's Motion

Gray moves to strike most of DeGussa's affirmative defenses. Gray makes a blanket argument that the Court should dismiss DeGussa's affirmative defenses because they are inadequately pleaded (either in failing to contain sufficient facts to provide notice of the defense or in failing to request any specific relief).

It is true that DeGussa's affirmative defenses generally consist of a single sentence, but they are hardly conclusory. Each sentence includes several facts that provide a basis for the defense being asserted. For example, DeGussa argues that the decedent misused the product at issue "by using a power saw to open the drum in question," thereby causing an injury. Though sparse, this sentence alerts Gray that DeGussa will attempt to prove at trial that the decedent used a power saw to attempt to cut open a drum of hazardous chemicals, and that this effort is a misuse of the barrel of chemicals supplied by DeGussa.

The Seventh Circuit has noted more than once that to dismiss a complaint because "it does not allege X" makes it a candidate for summary reversal. *See, e.g., Vincent v. City Colleges of Chicago*, 484 F.3d 919, 923 (7th Cir. 2007), *Pratt v. Tarr*, 464 F.3d 730, 731 (7th Cir. 2006). In resolving a motion to dismiss, the only question for the Court is whether the pleadings allow the court to determine if the claim (or in this case, defense) has any tenable theory or basis. *Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006) (citing *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999)). If Gray had needed more information concerning the DeGussa's affirmative defenses, she could have served a contention interrogatories or filed a motion for a more definite statement. *Pratt*, 464 F.3d at 733 (citing Fed. R. Civ. P. 33(c) & Fed. R. Civ. P. 12(e)). Gray's motion to strike the defenses as inadequately pleaded is DENIED.

Gray also moves for summary judgment on DeGussa's affirmative defenses. None of Gray's arguments have merit.

A.  Assumption of Risk

Under Illinois law, assumption of risk acts to reduce recovery in a strict liability action if a person voluntarily and deliberately exposes himself to a known danger. *Boland v. Kawasaki Motors*

*Mfg. Corp.*, 309 Ill. App. 3d 645, 653, 722 N.E. 2d 1234, 1241-42 (2000); *see also Coney v. J.L.G. Indus., Inc.*, 97 Ill.2d 104, 119, 454 N.E.2d 197, 204 (1983) (applying comparative fault principles to misuse and assumption of risk defenses in strict liability actions). A defendant pursuing an assumption of risk defense, however, must prove the subjective state of mind of the person who allegedly assumed the risk. *Id.* The defendant can do so by offering circumstantial evidence of the person's knowledge, experience, and background as well as the extent of the open and obvious nature of the risk. *Id.* Much of Gray's argument is based on her incorrect assumption that DeGussa needs to provide "direct evidence" of decedent's state of mind. *See Campbell v. Nordco Prod.*, 629 F.2d 1258, 1262 (7th Cir. 1980) (noting that such a requirement would in effect grant near automatic right of recovery in wrongful death actions); *Boland*, 722 N.E.2d at 1241-42 (noting that jury permitted to assess state of mind based on circumstantial evidence); Pl. 56.1(a) St. ¶¶ 18-19 (asserting that DeGussa has produced no direct testimony regarding decedent's state of mind).

Still, Gray argues that it is undisputed that the decedent had no knowledge of the risk of explosion. In support, Gray points only to the deposition testimony of Dr. Michael Jean Fox (Pl. 56.1(a) St. ¶ 20). Gray points to Dr. Fox as an expert, who reviews the accident file, and concluded that the decedent could not have known of the danger posed by an empty container of Chem-Trete BSM 20. Dr. Fox, however, offers no such conclusion. Dr. Fox posited that if certain skilled laborers were unlikely to know of the danger posed by an empty container of Chem-Trete BSM 20 then "how in the heck do you expect this uneducated laborer [,the decedent,] to know." (Fox Dep. at 100). Dr. Fox goes on to testify that he had "no idea what [decedent] knew or didn't know." (Fox Dep. at 100). At best, Dr. Fox's testimony is ambivalent.

Even putting aside the flaws in Dr. Fox's testimony, DeGussa offers evidence that place in dispute the decedent's knowledge of the risk posed by the empty drum. Most telling, decedent's employer held a meeting to discuss safety concerns at the job site where decedent's accident occurred and warned the employees to be careful not to cut anything near the Chem-Trete BSM 20 because of concerns about its flamability. (Reagan Dep. at 13-20). Further, decedent's employer further states that he made the Chem-Trete BSM 20 Material Safety Data Sheet available to employees and discussed it with them. (Reagan Dep. at 13-23). Reagan's testimony is more than sufficient to put decedent's state of mind at issue, and Gray's motion for summary judgment is DENIED.

B.  Misuse of Product

Gray argues that the Court should grant her summary judgment on DeGussa's affirmative defense of misuse. According to Gray, the undisputed testimony demonstrates that DeGussa was aware that many people use empty 55-gallon drums of Chem-Trete BSM 20 as trash containers or barbeque pits, and that such people have cut the tops off such drums. But Gray mischaracterizes or overstates much of the testimony she offers in support of her proposition. Plaintiff's expert, Kenneth Laughery claims that he has seen evidence of drums with lids that have been cut off, but does not specify whether they previously contained hazardous material or whether they were cleaned before being transformed. (Laughery Dep. at 66). Randy Rogers testified that he had seen *cleaned*, empty drums lined with plastic and used as trash receptacles. (Rogers Dep. at 36). Stephen Bearman testified that he has seen empty drums used as trash receptacles. (Bearman Dep. at 35). Neither Rogers nor Bearman, however, testified that they were aware that people would cut the lids of drums, particularly before the drums had been washed and cleaned to remove hazardous vapors. Gray suggests that the Court should ignore the distinctions between cleaned and uncleaned drums and

8

between those with detachable lids and those that had been cut, and focus solely on DeGussa's awareness that the drums would be reused. But whether DeGussa knew that drums would be reused after being cleaned (and, presumably, no longer dangerous) is a significantly different kind of knowledge than whether DeGussa was aware that people might ignore warning labels and physically cut into drums that might contain hazardous vapors.

Further, even if Gray did not mischaracterize the testimony she points to, DeGussa again points to evidence that places material facts at issue. DeGussa offers the testimony of Larry Anderson that the drums used as trash receptacles did not have lids that were cut off, but removable lids. (Anderson Dep. at 170-71). Quite simply, there is significant dispute over whether DeGussa was aware that people would attempt to saw the lids from empty, but vapor-filled, drums of Chem-Trete BSM 20 in order to make trash receptacles or barbeque pits, and summary judgment therefore is not appropriate.

Gray also argues that decedent did not "misuse the product at issue." (Pl. 56.1(a) St. ¶ 26). Gray, however, offers absolutely no evidence for this assertion, and the Court strikes that statement of fact. Gray further argues that DeGussa mischaracterizes the evidence when it argues that decedent cut into the drum (thereby misusing it). Gray argues that DeGussa's experts state that they do not know how the accident happened. It is, however, Gray who mischaracterizes the evidence. Although Anderson testified that he could not determine, precisely, how the accident occurred, he did testify that somehow, either purposefully or inadvertantly, a saw used by decedent cut the vapor-filled drum of Chem-Trete BSM-20. (Anderson Dep. at 141). It is the sawing of the drum or the use of the drum as a sawhorse, according to DeGussa's theory, that constitutes the misuse, and DeGussa has provided sufficient evidence to demonstrate a genuine issue of material fact as to that

issue. Gray's motion for summary judgment on DeGussa's affirmative defense of misuse is DENIED.

C.  Alteration, Open and Obvious, and Inherent Characteristics of the Product

Gray's arguments that she is entitled to summary judgment on DeGussa's affirmative defenses of alteration, an open and obvious hazard, and the inherent characteristic of the product are perhaps her flimsiest. She makes only half-hearted arguments that DeGussa has not supplied sufficient evidence to proceed with its affirmative defenses. Her argument that she is entitled to summary judgment on the defense of alteration consists of a single sentence: "there is no lay or expert testimony that the product was altered in any way after leaving [DeGussa's] custody and control and prior to its use by [decedent.]" In support, Gray points to pages ten and eleven of DeGussa's Initial Rule 26 disclosures, which discuss witnesses and documents in DeGussa's possession, but do not shed light, in any way, on what expert testimony exists regarding the issue of the drum's alleged alteration. Her argument about the open and obvious nature of the hazard is based on a similar assertion that "none of [DeGussa's expert] opinions support its burden of proof that the danger was an open and obvious hazard." Her argument regarding the inherent characteristic of the product is mimics the prior arguments: DeGussa "has offered no expert or lay witness testimony that the product possessed an inherent characteristic . . . ." (Pl. 56.1(a) St. ¶ 37).

Putting aside that Gray's statements of fact in support of her arguments are not statements of fact but legal conclusions, she operates under the mistaken notion that DeGussa must put forth sufficient evidence to create an issue of fact on the affirmative defense in order to survive summary judgment. This burden shifts to DeGussa only *after* the moving party has set forth specific facts showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986) (*after* a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial). Gray has not pointed to any specific facts to demonstrate the absence of a genuine issue of material fact, and has not shifted the burden to DeGussa,[2] and her summary judgment motion is DENIED.

IT IS SO ORDERED.

7/23/07
Dated

Hon. William J. Hibbler
United States District Court

---

[2] Even if she had, DeGussa points to considerable evidence in the record to demonstrate that there is a genuine issue of material fact as to these two issues. For example, DeGussa points to evidence that the contents of the label as interpreted by Gray's experts differed from the contents of the label provided by DeGussa during discovery. DeGussa points to evidence that decedent ignored warnings about safety at the worksite given to him by his employer or that were provided on the label of the drum itself (the contents of which, quite clearly, are in dispute). DeGussa points to the composition of the product, as an 80% ethanol and methanol mixture (again, the contents of the warning label, quite clearly, are in dispute, and Gray cannot rest on her experts representation of the label's warnings) as well as testimony from its experts regarding the fact that the flamability of alcohol is common knowledge.